## GEORGE S. HANNA

*v.*

## WILLIAM R. RAYBURN *et al.*

1. FRAUD—*evidence of complicity in false letters.* The fact that no one else but the owner of Kansas lands, which he trades for other land, could have any interest in the writing of letters making offers to purchase the Kansas land at more than its real value, which are shown to the other party, does not furnish a legal inference of such other party's complicity in procuring such letters, although it may appear the letters were fictitious. It is not sufficient evidence of his commission of a fraudulent act that it was for his interest, and that of no one else, to have the act done.

2. SAME—*party must rely on fraudulent assurances.* A party receiving Kansas lands in exchange, can not be allowed to rescind the trade from the fact of fictitious letters having been addressed to a former owner of the lands, offering to purchase the same at a price in excess of their value, when he is the active party in urging the contract, and the proof shows that he did not rely upon such letters, but rather upon the statements of disinterested persons.

APPEAL from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. WILLIAMS, BURR & CAPEN, for the appellant.

Messrs. STEVENSON & EWING, and Mr. O. T. REEVES, for the appellees.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

The object of the bill in equity in this case was, to have set aside and canceled a deed executed by appellant, Hanna, to appellee Rayburn, December 20, 1873, for 380 acres of land in McLean county, Illinois. The deed was executed in pursuance of an agreement between the parties, whereby Rayburn was to take said land, called the Wrenn farm, at $10,000, and Hanna 320 acres of land in Franklin county, Kansas, owned by Rayburn, estimated in the trade at $20 per acre, and Ray-

burn was to execute his note, secured by a mortgage on the Wrenn farm, for the residue of the money.

The bill sets out two causes for the cancellation of the deed:

1. Because, as is alleged, Rayburn perpetrated a fraud, in falsely representing that he had received sundry letters from one Potts, offering to purchase the Kansas land at $20 per acre, and that Potts would come on and buy said land at that price.

2. That there was a verbal agreement not to record the deed executed by complainant, and in case Potts did not come on by March 15, 1874, that said deed was to be given up and canceled.

The court below, on final hearing upon proofs, dismissed the bill, and the complainant appealed to this court.

It appears that, on the part of the complainant, the trade was negotiated by one Stipp, who was the real owner; that the latter having a mortgage on the land from one Wrenn, placed the same in complainant's hands to foreclose, who, on foreclosure, bid off the land in his own name.

In regard to the alleged agreement that the deed was not to be recorded, and was to be given up and canceled if Potts did not take the Kansas land, there is no proof whatever except the testimony of Stipp and Rayburn themselves, which is contradictory. The proof clearly fails to sustain the allegation of the bill in respect of such agreement.

As respects the other charge in the bill, of fraud, it appears, from the evidence, that Rayburn is a farmer, who had resided on a farm in McLean county since 1851; that in the fall of 1872 he traded his farm in that county to one John T. Nicolls, and took in exchange and as part payment this Kansas land, estimated in the trade at $20 per acre; that it was a remarkably desirable half section of land.

In September, 1873, Rayburn had a sale of property, and was making arrangements to remove to Kansas. On the 6th of October, 1873, he engaged cars, as he states, in which to ship some stock, etc., and on the evening of that day met Stipp on the street in Bloomington, who informed him that John Nicolls had

received a letter from one Potts about the Kansas land, Stipp advising him to see Nicolls about it, and also advising him to give up his contemplated removal to Kansas, and proposing to trade him this Wrenn farm. The following day Rayburn saw Nicolls, and received from him the first Potts letter. It purported to be signed by J. W. Potts, stating he was informed that he (Nicolls) was the owner of this Kansas land, and that his price was $20 per acre; that he would give that for it, cash; that he had just come from the neighborhood of the land—was then in Chicago, on his way home; that if the land could be bought, to write him at Albany, "against" the 25th October. This letter was shown to Stipp, and under his advice Rayburn answered it, agreeing to take the price. Four letters were subsequently received by Rayburn, two purporting to be from Potts and two from members of his family, all holding out the idea that he would come on and take the Kansas land. Two of the letters are preserved and are in evidence. Their place of date is, "Ten Miles from Albany." All these letters were shown to Stipp, except one that was lost, and the contents of that were stated.

On the 24th of November, 1873, Stipp wrote a letter to Potts, which Rayburn signed and mailed. Stipp, also, for himself, wrote a letter to Potts, which was mailed the same day. Neither of these letters produced an answer. Diligent search and inquiry at and around Albany, for several miles, failed to discover any knowledge or information of any such man as J. W. Potts, and no evidence appears of his existence, further than from said letters.

The claim is, that there was no such person as Potts; that these letters were fictitious; that Rayburn either wrote them, or procured them to be written, in order to effect the trade; and that Stipp relied upon the letters, and was induced thereby to have executed the deed sought to be annulled.

There is no direct testimony tending to show that Rayburn was in any way connected with the writing of the letters. There are some minor circumstances insisted upon, but we attach so little importance to them that we think we may say,

there is little more to show any connection of Rayburn with the writing of the letters than the mere fact that it was for his interest to have the letters written, and it does not appear to have been for the interest of any one else that they should have been written; and, it is insisted, that, of itself, is sufficient ground for the inference of Rayburn's complicity in the matter. We know of no such rule of evidence, and think it would be an unsafe one to adopt, that it is sufficient proof of one's commission of a fraudulent act that it was for his interest, and that of no one else, to have the act done. It would add strength to other evidence in that direction, and that would be the extent. It might excite suspicion, but that will not suffice.

Rayburn, himself, unqualifiedly denies any connection with the writing of the letters, and the circumstances of the receipt of the first Potts letter tend in support of his testimony, at least so far as that letter is concerned. It was received by John Nicolls, the former owner of the Kansas land, and Rayburn's attention was called to it by Stipp himself. It would seem that Rayburn was then on the point of starting to Kansas with his family, to occupy this land himself. This militates against the idea that this letter to Nicolls was a fraudulent contrivance, of Rayburn's concoction, to help him to make sale of his Kansas land.

The evidence goes to show, that all through, Stipp was the active one in the negotiation, and that it was he who was urging the trade on Rayburn, rather than Rayburn on Stipp.

Besides, it is by no means clear that Stipp relied upon these letters from Potts in concluding the bargain which he made. The evidence shows that this Wrenn farm, which was traded to Rayburn, was in a very dilapidated condition, and that Stipp was quite anxious to dispose of it. John Nicolls and John T. Nicolls, former owners of the Kansas land (the latter having traded it to Rayburn), had both been upon the land themselves, and examined it. The former testified that it was a piece of the finest land he had ever seen in Kansas; that he considered it worth from $15 to $20 an acre, cash; that he sold it once

for $15 an acre, some money and some trade, and took it back at $20.

John T. Nicolls, who was the agent of Stipp for the sale of the Wrenn farm, testified to the excellent quality of the Kansas land, and that in his judgment it was worth $17 an acre, cash; that Stipp and he talked a number of times about the quality of this land; that he told him, as near as he could, about its value and quality, and said if the land was not worth $20 an acre it would soon grow to it; that he had heard Stipp and John Nicolls, his father, talk about it.

As to value, there is the testimony of two witnesses living in Kansas, in the county in which the land is, that its cash value was but $6 per acre; but we lay this out of view as having any especial bearing, as the record fails to disclose that Rayburn or Stipp had any knowledge or information in regard to the land, more than that communicated by the two Nicolls. John Nicolls says, he told Stipp he had no faith in Potts taking the land, and that Stipp, in reference to the first Potts letter, had said it might be a bogus letter. There had been no answer received up to the time of making the deed, December 20, 1873, to either of the two letters written on the 24th of November, 1873, by Stipp, for himself and Rayburn, to Potts. John T. Nicolls testifies, that five or six days before the trade was closed, Stipp said to him that Rayburn's man must have got his neck broke, as he had not been heard of for some time. The witness Stubblefield, too, who was well acquainted with the Wrenn farm, says that Stipp told him Rayburn agreed to take it at $10,000, partly in Kansas land and partly in money, and he told him he had better take it.

The Potts letters doubtless had some influence in inducing the entering into the negotiation, but there is reason to believe that in the final consummation of the trade Stipp acted upon the strength of the information in regard to the land he had obtained from the two Nicolls, from their personal knowledge of the land, rather than in reliance upon the offer that Potts had made for it, and the belief that he would appear and pay the money for it.

The circuit court found that the allegations of the bill were not sustained by the proofs. Upon a careful examination of the testimony, we are unable to say that the court erred and that its finding should be set aside.

The decree is affirmed.

*Decree affirmed.*